**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| DONNA MASHA, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL NO. 3:10CV248 |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Donna Masha, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for Social Security Disability ("DIB") payments. The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 7) be DENIED; that Defendant's motion for summary judgment (docket no. 9) be GRANTED; and that the final decision of the Commissioner be

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on July 22, 2006, claiming disability due to right ankle surgery and depression, with an alleged onset date of January 6, 2006. (R. at 117-19, 150.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 61-65; 67-68.) On March 25, 2009, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 21-58.) On June 10, 2009, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where, based on her age, education, work experience, and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 11-20.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-4.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial

3

evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 13.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of residuals of right ankle surgery, diabetes mellitus, epicondylitis of the right elbow, degenerative joint disease of the right knee, thoracic spondylosis, obesity, depression, and panic disorder, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 13-15.) The ALJ next determined that Plaintiff had the RFC to perform sedentary work, except that she cannot squat, crawl, or kneel, and must avoid hazards such as unprotected heights and dangerous machinery. (R. at 15-18.) Further, due to pain, fatigue, mental disorders, and related symptoms, Plaintiff is limited to jobs that do not entail more than simple instructions. (R. at 15-18.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a cashier, child care provider, or school cafeteria worker because of the levels of exertion required in each position. (R. at 18.) At step five, after considering Plaintiff's age, education, work experience, and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 19.) Specifically, the ALJ found that Plaintiff could work as an addresser, a callout operator, or a charge account clerk. (R. at 19.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 19-20.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that: (1) the ALJ failed to properly consider whether Plaintiff's impairments satisfied Listing 1.02A or 1.03; (2) the ALJ erred by not assigning controlling weight to Plaintiff's treating physicians' opinions; and (3) the ALJ posed an insufficient hypothetical to the VE. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 8-18.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 14-22.)

**A.  Substantial evidence supports the ALJ's decision that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.**

Plaintiff argues that the ALJ's findings regarding her physical impairments are not specific enough to explain why she did not have an impairment that met or medically equaled a Listing. (Pl.'s Mem. at 9-12.) Plaintiff argues that the ALJ should have identified the relevant Listed Impairments (namely 1.02A and 1.03) and compared each of the listed criteria to the evidence in the record. (Pl.'s Mem. at 10.) Plaintiff contends that it is "simply impossible" to tell whether there was substantial evidence to support the ALJ's determination. (Pl.'s Mem. at 10.)

Listing 1.02A impairments involve "one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.02A. Listing 1.03 involves "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in

7

1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.03. In both Listings, the impairment must result in an "inability to ambulate effectively." 20 C.F.R., Pt. 404, Subpt. P, App. 1 §§ 1.02(A), 1.03. Inability to ambulate effectively is defined as:

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. <u>Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities</u>. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.00B2b (2003) (emphasis added).

The ALJ found that Plaintiff's epicondylitis, degenerative joint disease, and ankle impairments had "not resulted in an inability to ambulate effectively or perform fine and gross movements effectively meeting sections 1.02A or 1.02B of the Listings." (R. at 14.) The ALJ did not make any findings regarding Listing 1.03, but as already noted, an inability to ambulate effectively must be present in order to satisfy the requirements of such listing. Plaintiff contends

8

that the ALJ's conclusion that Plaintiff's condition has not resulted in an inability to ambulate effectively "is belied by his very own finding that she is limited to only sedentary work." (Pl.'s Mem. at 12.) Plaintiff also contends that the ALJ has not explained why her impairments do not meet or medically equal a Listing. (Pl.'s Mem. at 8-12.)

The ALJ noted that there was no evidence demonstrating that Plaintiff required a walker for ambulation. (R. at 17.) Further, despite her lower extremity symptoms, the ALJ noted that Plaintiff took care of her own personal needs, did light housework chores and cooking, drove, and shopped, although Plaintiff used a motorized cart when shopping. (R. at 17.) However, although Plaintiff suffered from lower extremity symptoms and had an "occasional need for an assistive device for ambulation," the ALJ found that Plaintiff could still walk and stand up to two hours in an eight-hour day with appropriate breaks. (R. at 17.)

Plaintiff contends that she is unable to ambulate effectively, and this conclusion is supported by her assertions that she cannot "carry out routine ambulatory activities, such as shopping and banking" or "walk a block at a reasonable pace on rough or uneven surfaces." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.00B2B. Though Plaintiff contends that she cannot walk a block at a reasonable pace on rough or uneven surfaces, the ALJ did not make any such finding. Further, the record does not indicate any evidence supporting such a contention. One of Plaintiff's treating physicians did indicate that Plaintiff could not walk more than three to five feet without the assistance of a cane, but there is no indication of being unable to walk at a reasonable pace. (R. at 463.) Plaintiff also indicates that she cannot carry out routine ambulatory activities, such as shopping and banking, and offers as evidence her contention that she "requires" a motorized shopping cart at the grocery store. (Pl.'s Mem. at 12.) However, the

9

ALJ considered Plaintiff's assertion that she used a motorized cart, and still found that Plaintiff's daily activities of living were inconsistent with severe pain precluding all work-related activity and "serve to convince the undersigned that [Plaintiff] retains the ability to stand and walk up to two hours overall in an eight-hour day with appropriate breaks." (R. at 17.)

Plaintiff also contends that her daily activities of living are all sedentary in nature, and support the ALJ's "ultimate finding that [Plaintiff] would be limited to sedentary forms of activity." (Pl.'s Mem. at 14.) However, even if all of Plaintiff's activities are in fact sedentary, the Court is not persuaded that such a fact leads to the conclusion that Plaintiff cannot ambulate effectively. Further, the Court is also not persuaded that a limitation to sedentary forms of work is a "highly significant factor" in determining whether Plaintiff can ambulate effectively. (Pl.'s Reply Memorandum ("Pl.'s Reply") at 5.) If the Court accepts this reasoning, then all future claimants who are limited to only sedentary occupations will have the opportunity to claim an inability to ambulate effectively because of such limitation. Further, to be capable of sedentary work, a claimant must be able to stand or walk at least two hours in an eight-hour day, belying the argument that sedentary work is indicative of an inability to ambulate effectively.

Plaintiff does indeed suffer from severe impairments and lower extremity symptoms, as found by the ALJ, but the ALJ properly determined that Plaintiff's severe impairments cannot meet or medically equal a Listed impairment. The Listings require an inability to ambulate effectively for twelve months. An inability to ambulate is defined as "an extreme limitation of the ability to walk" such as the inability to walk without the use of hand-held assistive devices that limit the functioning of <u>both</u> upper extremities. One example given is the inability to walk without the use of *two* canes. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.00B2b. Plaintiff asserts

10

that the inability to ambulate effectively is "defined more broadly" than Defendant argues, but Plaintiff's proffered definition is too broad. (Pl.'s Reply at 3.) Plaintiff is correct that the use of a walker is only one example of an inability to ambulate effectively, but Plaintiff fails to offer evidence that she requires assistive devices which limit the use of both her upper extremities. Further, Plaintiff's treating physician, Dr. Cookus, as late as April 2008, noted that Plaintiff only required a single cane to ambulate more than three to five feet. (R. at 462-63.) Plaintiff has misread the criteria for meeting Listings 1.02A and 1.03, as the use of a cane alone is insufficient to meet the Listings. Accordingly, it is the Court's recommendation that the ALJ's decision that Plaintiff's impairments did not meet or medically equal any Listing is supported by substantial evidence and application of the correct legal standard.

      **B.**     **Substantial evidence supports the ALJ's decision to not assign controlling weight to Plaintiff's treating physicians' opinions.**

Plaintiff argues that the reports of her treating physicians (namely Drs. Maughan[6] and Cookus) were consistent with each other, uncontradicted by substantial evidence, and entitled to great, if not controlling, weight. (Pl.'s Mem. at 12-15.) Plaintiff contends that the ALJ's assignment of "some" weight to their opinions and his failure to provide "any explanation whatsoever for the weight assigned and its meaning" was reversible error. (Pl.'s Mem. at 15.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ

---

[6] Defendant notes that the ALJ and Plaintiff appear to attribute the opinion of Dr. Benbow to Dr. Maughan. (Def.'s Mem. at 18; Pl.'s Mem. at 12-15; R. at 18, 298-99.) The Court notes that there is confusion as to which doctor wrote the opinion; however, as the ALJ and Plaintiff consistently refer to such as Dr. Maughan's opinion, this Court will do the same.

must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

Dr. Maughan opined that due to Plaintiff's right foot pain and symptoms, Plaintiff would be able to sit for six or more hours in an eight-hour day; stand or walk for less than one hour; could not push or pull repetitively, but could use her hands for simple grasping and fine manipulation; could not use her right foot for repetitive movements; could lift or carry less than nine pounds occasionally; could occasionally bend and reach above shoulder level, but could

12

never squat, crawl, or climb; must avoid unprotected heights, moving machinery, driving automotive equipment, and more than moderate exposure to dust, fumes, and gases; would be absent from work about three times per month; would need to take unscheduled breaks in an eight-hour day; and her pain and symptoms would often interfere with her attention and concentration. (R. at 298-99.) As the ALJ noted, Dr. Cookus's opinion "generally mirrored" Dr. Maughan's, except that Dr. Cookus opined that Plaintiff could occasionally bend and crawl, could never squat or climb, and could frequently reach above shoulder level; Plaintiff could only stand or walk for five to ten minutes at a time because of the severity of her pain; Plaintiff would be absent from work more than three times a month; Plaintiff would need three to four unscheduled breaks per day, each about thirty minutes in duration to elevate her foot; and Plaintiff's pain and symptoms would constantly interfere with her attention and concentration. (R. at 18, 280-81.) Dr. Cookus opined that Plaintiff could maintain a sedentary occupation, but at some point updated his opinion to reflect that, due to Plaintiff's worsening symptoms, she could no longer sustain sedentary employment. (R. at 462.) Dr. Cookus also noted that Plaintiff required the use of a cane to walk more than three to five feet, and had "significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance or gross and dexterous movement or gait and station." (R. at 463.)

The ALJ found that the opinions of Drs. Maughan and Cookus were given "some weight and it [was] reflected in the residual functional capacity as determined." (R. at 18.) The ALJ did not afford the opinions controlling weight because the physicians did not explain how Plaintiff's right ankle problems limited her ability to use her upper extremities, and their opinions were inconsistent with the objective findings on the various examinations, the nature of her medical

13

care and response to treatment, and Plaintiff's admitted daily activities. (R. at 18.) At the same time, the ALJ also assigned little weight to the state agency medical opinions because evidence received at the hearing level established that Plaintiff was more limited than determined by the state agency consultants. (R. at 18.) The ALJ found that Plaintiff's residual functional capacity was supported by the nature of her medical care and response to treatment, the objective findings on physical examinations, and Plaintiff's admitted daily activities, and noted that his assessment took into consideration all medical opinions and Plaintiff's subjective complaints. (R. at 18.)

The opinions of Drs. Maughan and Cookus are reflected in the ALJ's RFC assessment in that he concluded that Plaintiff could not squat, crawl, or kneel; must avoid hazards such as unprotected heights and dangerous machinery; and due to her pain, fatigue, mental disorders, and related symptoms, was limited to sedentary occupations that do not entail more than simple instructions. (R. at 15-18.) To the extent that their opinions are not reflected in the ALJ's RFC assessment, substantial evidence nevertheless supports the ALJ's decision not to afford controlling weight to them. As the ALJ noted, neither physician explained how Plaintiff's right ankle problems limited her ability to use her upper extremities. (R. at 18.) It appears from Plaintiff's argument that she primarily disagrees with the ALJ's finding that Plaintiff did not have more severe walking and standing restrictions by her repeated assertion that she is "unable to ambulate effectively." (Pl.'s Mem. at 14.) As noted earlier, Plaintiff has not demonstrated that she has such an inability as defined by the regulations.

The record reflects that Plaintiff underwent surgery on her right ankle in January 2006, yet had to undergo a subsequent surgery in October 2006 because she was "extremely active in the immediate postoperative period and had a significant amount of adhesion and hypertrophic

14

scar form in the operative site." (R. at 228-29, 294.) Treatment records from Dr. Cookus reflect that after Plaintiff's second surgery, her pain lessened when she wore her foot brace. (R. at 283.) However, the ALJ considered Plaintiff's lower extremity symptoms and her occasional need for an assistive device by limiting her to a sedentary job which comports with Drs. Maughan and Cookus's opinions that Plaintiff could sit for six or more hours in an eight-hour day. (R. at 17, 280-81, 298-99, 462-63.) The ALJ disagreed, however, that Plaintiff could only stand or walk for less than one hour, as sedentary work requires the ability to stand or walk for no more than about two hours in an eight-hour day. (R. at 17; SSR 83-10.) Such a conclusion is supported by the medical evidence of record. For example, though Plaintiff testified that she used a rolling walker for ambulation, there is no evidence that she required such, or that such was ever prescribed by a doctor. (R. at 25-26.) Plaintiff also reported that she attended church once a week, occasionally drove a car, went outside every day and could go out alone, and occasionally prepared simple meals; but performed no housework and needed some assistance with her personal care. (R. at 35, 189-96.) Plaintiff did not require any further surgeries for her ankle, nor had she been hospitalized for any lower extremity pain after her second surgery. On April 3, 2007, Stephen Boychuck, Family Nurse Practitioner, examined Plaintiff and noted that her balance, gait, and stance were normal, but he referred her for orthopaedic treatment for her right ankle/foot pain. (R. at 446-47.) From May to August 2007, Plaintiff attended physical therapy for her right ankle. (R. at 397-408, 415-19, 423-26, 430-37.) Plaintiff was counseled on the importance of completing her rehabilitation program as a post-surgical patient, because she had only completed half of her prescribed treatment program during each of her visits, and she did not attend therapy for a month because she reported she was on vacation. (R. at 399-400, 415.)

15

Plaintiff was released from physical therapy without restrictions.  Id.  It does not appear that Plaintiff complained of foot pain again until December 19, 2007, when she requested another referral to podiatry because her previous referral had expired.  (R. at 367-68.)  Plaintiff was given yet another podiatry referral on May 21, 2008.  (R. at 359-62.)  Plaintiff subsequently visited her physician for a variety of complaints, including knee pain, chest pain, and a cough, but did not present with a chief complaint of foot or ankle pain.  (R. at 466-530.)  Such evidence supports the ALJ's conclusion that Plaintiff's lower extremity pain was not so severe as to preclude her from all work-related activity.  (R. at 17.)

It is also important to note that the ALJ did not "reject" Drs. Maughan and Cookus's opinions regarding Plaintiff's ability to stand and walk, as Plaintiff's arguments suggest.  (Pl.'s Mem. at 5, 13-15.)  Instead, the ALJ found that their opinions regarding such an ability were not entirely supported by the medical evidence, which reflected mainly conservative treatment for Plaintiff's allegations of pain.  (R. at 18.)  The physicians' opinions that Plaintiff's pain would often or constantly interfere with her attention and concentration are also not supported by the evidence of record, nor are their assertions that Plaintiff would be absent from work at least three times a month.  (R. at 280-81, 298-99.)  Plaintiff testified that she saw her physician once every two months.  (R. at 35.)  As noted, it does not appear that Plaintiff made ongoing complaints to her primary care physician regarding her right foot pain.  (R. at 350-459, 466-530.)  Plaintiff also testified that she only took the mild medication Motrin for her pain.  (R. at 35-36.)  Further, Plaintiff reported that she was able to pay attention; enjoyed watching television, reading, and making jewelry and crafts; could use a computer; needed no reminders; followed instructions well; could manage her own finances; could handle stress; and had no difficulty interacting with

others.  (R. at 171-74, 192-95.)  Such evidence is contrary to the physicians' opinions that Plaintiff's concentration and attention is so severely affected; or that Plaintiff would miss work at least three times a month due to complications from her impairments, or to undergo medical treatment.

The ALJ's decision to afford "some" weight to the opinions of Drs. Maughan and Cookus is therefore supported by substantial evidence and application of the correct legal standard.  The ALJ has clearly adopted portions of the treating physicians' opinions, as reflected in his RFC determination.  (R. at 15-18.)  However, the entirety of the record did not support those additional aspects of the opinions regarding Plaintiff's ability to walk and stand or her ability to concentrate.  Plaintiff's argument that the ALJ did not provide "any explanation whatsoever for the weight assigned" is not persuasive.  Accordingly, the ALJ's decision should be affirmed in this regard.

### C. The ALJ posed a proper hypothetical to the VE which included all aspects of the RFC as determined by the ALJ.

Plaintiff argues that the hypothetical posed to the VE was invalid because "it failed to take into account [Plaintiff's] medical conditions and the specific functional restrictions attendant thereto, as assessed by the treating physicians."  (Pl.'s Mem. at 17.)  Specifically, Plaintiff contends that the hypothetical did not include the requirement that she must elevate her legs.  (Pl.'s Mem. at 17.)

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The Commissioner can carry his burden in the final step with the

testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id.

Plaintiff's argument must fail in this regard because, as noted earlier, the ALJ's decision to only afford some weight to her treating physicians' opinions is supported by substantial evidence. The "requirement" that Plaintiff elevate her legs stems from Dr. Cookus's opinion, in which he asserted that Plaintiff needed three to four unscheduled thirty minute breaks in an eight-hour workday to elevate her foot. (R. at 281, 462.) However, Dr. Cookus provided no specific rationale as to why Plaintiff needed to elevate her foot. Further, there is no support for such an assertion in the record, as medical records reflected minimal or no edema. (R. at 281-82, 300, 361, 372, 376, 381, 384, 390, 394, 411, 524.) The ALJ did not account for such a functional limitation in his RFC. Therefore, the VE was not required to consider such a limitation, and his failure to do so does not constitute reversible error. Accordingly, the ALJ's decision should be affirmed.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 7) be DENIED; that Defendant's motion for summary judgment (docket no. 9) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                   /s/
                                       DENNIS W. DOHNAL
                                       UNITED STATES MAGISTRATE JUDGE

Date: November 19, 2010
Richmond, Virginia